UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Appeal No. 15-1222

---

HIGGINS ELECTRIC, INC., et al.

Plaintiff/Appellant,

v.

O'FALLON FIRE PROTECTION DISTRICT,

Defendant/Appellee.

---

Appeal from the United States District Court
Eastern District of Missouri

The Honorable Ronnie L. White United States District Judge

---

**BRIEF OF APPELLEE O'FALLON FIRE PROTECTION DISTRICT**

---

Lawrence R. Smith, #MO31976
Aaron I. Mandel, #MO39692
Brinker & Doyen, L.L.P.
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
314-863-6311
Fax: 314-863-8197
smith@brinkerdoyen.com
amandel@brinkerdoyen.com
***Attorneys for Appellee O'Fallon Fire Protection District***

## TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................ 3

Jurisdictional Statement ........................................................................ 5

Statement of the Issues .......................................................................... 6

Statement of the Case ............................................................................ 7

Summary of the Argument .................................................................... 14

Argument I ............................................................................................ 16

Argument II ........................................................................................... 21

Argument III .......................................................................................... 33

Conclusion ............................................................................................ 44

Certificate of Compliance ...................................................................... 45

Certificate of Service ............................................................................. 46

## TABLE OF AUTHORITIES

**Cases** **Page**


*Abramson v. Pataki*, 278 F.3d 93 (2nd Cir. 2002) ....................................................29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................18

*Barstead v. Murray County*, 420 F.3d 880 (8th Cir. 2005) ....................................................37

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................18

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ....................................................23

*Bradford v. Huckabee*, 394 F.3d 1012 (8th Cir. 2005) ....................................................18

*Corey Airport Services, Inc. v. Clear Channel Outdoor, Inc.*,
682 F.3d 1293 (11th Cir. 2012) ....................................................35

*Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269 (11th Cir. 2008)....................................................35

*Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004) ....................................................21

*Engquist v. Oregon* Dept. of Agriculture, 553 U.S. 591 (2008)....................................................34, 37

*Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009)....................................................35

*Gregory v. Dillards, Inc.*, 565 F.3d 464 (8th Cir. 2009)....................................................19

*Hanten v. School District of Riverview Gardens*, 183 F.3d 799
(8th Cir. 1999)....................................................16, 21, 30, 31, 33

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977)....................................................38

*National Federation of the Blind of Missouri v. Cross*,
184 F.3d 973 (8th Cir. 1999)....................................................39, 40

*Kim Const. Co. v. Board of Trustees of Village of Mundelein*,

14 F.3d 1243 (7th Cir. 1994)....................................................................14, 22

*La Mar Const. Co. v. Holt Co. R-II School Dist.*, 542 S.W.2d 568

(Mo.App. 1976)...................................................................................23, 24

*Metcalf & Eddy Serv., Inc. v. City of St. Charles*, 701 S.W.2d 497

(Mo.App. 1985)..........................................................................................24

*Metropolitan Exp. Services, Inc. v. City of Kansas City, Missouri*,

23 F.3d 1367 (8th Cir. 1994)..............................................................22, 25, 26

*Public Communications Services, Inc. v. Simmons*, 409 S.W.3d 538

(Mo.App. 2013)...................................................................................27, 28

*Sacco v. Pataki*, 982 F.Supp.2d 231 (S.D. N.Y. 1997)......................................29, 30

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3rd Cir. 2010) ...................................18

*Stalley v. Catholic Health Initiatives*, 509 F.3d 517 (8th Cir. 2007)........................22

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................18

**Rules & Statutes**

21 U.S.C. §41 ...........................................................................................................5

28 U.S.C. §1291 .......................................................................................................5

28 U.S.C §1331 .........................................................................................................5

42 U.S.C. §1983 ..............................................................................................5, 6, 33

## JURISDICTIONAL STATEMENT

On May 21, 2014, Higgins Electric, Inc. ("Higgins") and Local 57 of the St. Louis District Council of Carpenters of Greater St. Louis and Vicinity ("Carpenters") filed their Complaint against O'Fallon Fire Protection District ("O'Fallon") in the United States District Court for the Eastern District of Missouri. (App. at 1). The Complaint alleged claims under 42 U.S.C. §1983 as well as under Missouri statutes. Appellants invoked Federal question jurisdiction under 28 U.S.C §1331. (Id).

On July 9, 2014, O'Fallon filed its Motion to Dismiss the Complaint. (App. at 49). On January 14, 2015, the Court entered its Judgment granting O'Fallon's Motion. (App. at 173). Higgins and Carpenters filed their Appeal on January 26, 2015. (App. at 174).

This Court has jurisdiction as the Judgment is a final Order of the District Court that disposes of all parties and claims. 28 U.S.C. §1291. The District Courts in the State of Missouri are within the territory of the Eighth Circuit Court of Appeals. 21 U.S.C. §41.

## STATEMENT OF THE ISSUES

**I.**

**THE DISTRICT COURT DID NOT ERR IN DISMISSING APPELLANTS' COMPLAINT AND DETERMINING THEY FAILED TO SET FORTH SUFFICIENT FACTS SUPPORTING STANDING IN THAT APPELLANTS' ALLEGATIONS REGARDING THEIR CLAIMS ARE CONCLUSORY RATHER THAN FACTUAL.**

**II.**

**THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT APPELLANTS LACKED STANDING TO CHALLENGE THE CONTRACT AWARD IN THAT MISSOURI LAW IS CLEAR THAT A LOSING BIDDER LACKS STANDING.**

**III.**

**THE DISTRICT COURT DID NOT ERR WHEN IT DETERMINED IT DID NOT HAVE JURISDICTION UNDER 41 U.S.C. SECTION 1983, THE FIRST AMENDMENT AND THE FOURTEENTH AMENDMENT BECAUSE THE COURT DID NOT HAVE JURISDICTION IN THAT APPELLANTS FAILED TO PROPERLY ALLEGE CAUSES OF ACTION AND HAVE NO STANDING TO ALLEGE CLAIMS.**

## STATEMENT OF THE CASE

### A. The Bidding Process

In the Spring of 2014, O'Fallon solicited a bid for the general construction of a new firehouse. (App. at 22). The new firehouse was to be located at 1200 North Main in the City of O'Fallon, Missouri. (App. at 30). Bids were to be received at O'Fallon's administrative offices by May 15, 2014. (Id).

Under the "General Information" section, the invitation to bid stated that "O'Fallon Fire Protection District reserves the right to accept or to reject any or all bids. O'Fallon Fire Protection District reserves the right to waive any variances from original bid specifications." (App. at 30). This provision also stated that "This request for proposal creates no obligation on the part of the District to award a contract or to compensate any applicant for any costs incurred during proposal presentation, response, submission, or oral interviews (if held)." (App. at 31). Under the "Bidding Procedures" section, the latest printing of the recommended guide for bidding procedures and contract awards was to guide all bidding. (App. at 34).

Under the "Rejection of Proposals" section of the Invitation to Bid, O'Fallon reserved the right to reject any and all proposals when that rejection was in the interest of O'Fallon. (App. at 36) Under the "Award of Contract" section,

O’Fallon noted that it reserved the right to award the contract to a bidder other than the lowest bidder. (Id).

On May 27, 2014, O’Fallon awarded the contract for the electrical contracting of the firehouse. (App. at 24) The bid was awarded to someone other than Higgins. (Id).

**B. The Underlying Suit**

On May 21, 2014 Higgins and Carpenters filed their complaint against in the United States District Court for the Eastern District of Missouri. (App. at 1). The operative complaint at the time of the District Court’s ruling on O’Fallon’s motion to dismiss herein was the Second Amended Complaint. (App at 21) The Second Amended Complaint was filed on June 4, 2014. (App. at 21). A copy of the Invitation to Bid was attached to the Second Amended Complaint as was a copy of the Recommended Guide for Competitive Bidding Procedures and Contract Awards for Building Construction (“Recommended Guide”) . (App. at 30; 39).

The Second Amended Complaint was in four counts. (App. at 21-29). In the Second Amended Complaint, Appellants claimed that Higgins had a collective bargaining agreement with Carpenters. (App. at 22). It was alleged that O’Fallon solicited bids for the construction of the new firehouse and that, in the “Instructions to Bidders,” there was a provision stating that the Recommended

Guide would guide all bidding. Appellants alleged that the Recommended Guide stated:

> "The owner, by provisions in the instructions to bidders, invitation or advertisement to bid, typically retains the right to reject any and all bids. <u>However, rejection should not be used as a subterfuge</u> (1) to accept a bid not submitted before the prices of others were made public, or (2) <u>to obtain an estimate of the cost of the work and proceed to award it</u> in segregated or separate contracts or <u>to a bidder selected in advance</u>."

(App. at 23) (emphasis in Second Amended Complaint).

Appellants also alleged that the Recommended Guide stated that the contract "should be" awarded to the lowest bidder. (Id).

Higgins claimed that it submitted the lowest responsible bid for the electrical construction on the firehouse. (Id). However, Higgins claimed that on May 15, 2014, it was informed by an agent of O'Fallon that it would not be awarded the work of the electrical construction on the firehouse because its employees were represented by Carpenters and that Carpenters were not affiliated with the AFL-CIO. (Id). O'Fallon allegedly advised that it was a signatory to a project labor agreement, and that the terms of the labor agreement barred Higgins from

participating in the construction of the firehouse. (Id). Appellants alleged the project labor agreement required that O'Fallon enter into a union-only agreement, but the project labor agreement was not part of the invitation to bid. (App. at 24). Appellants averred that the construction of the firehouse was then awarded to the Laborers' International Union of North America ("Laborers") and that Laborers were not affiliated with the AFL-CIO. (App. at 24).

Count I of Appellants' Second Amended Complaint was titled 'Equal Protection", and claimed that O'Fallon acted under color of State law and "specifically targeted Higgins and the Carpenters and attempted to interfere with Higgins' business and the employment of those Carpenters members that are employed by Higgins, solely because Higgins is not a signatory to a collective bargaining agreement with Local 1 of the International Brotherhood of Electrical Workers ("IBEW")." (App. at 24). Appellants alleged that Higgins and Carpenters had been arbitrarily and maliciously treated differently from similarly situated electrical contractors and employees of electrical contractors and that this violated the equal protection clause. (Id).

In Count II, Appellants asserted the same facts, claiming the failure to award the contract to Higgins did not meet basic standards of due process because O'Fallon did not have objective data to not award the contracts for electrical

contracting on the firehouse on more than surmise, guess work or gut feeling. (App. at 26-27).

Count III claimed similar facts, alleging the failure to award the contract violated Appellants' First Amendment Freedom of Association. (App. at 27). Finally, Count IV alleged violation of the Missouri Constitution and Statutes.

On July 9, 2014, O'Fallon filed its Motion to Dismiss. (App. at 49). In the Motion, O'Fallon asserted Appellants lacked standing because their claim arose from O'Fallon's failure to award Higgins the electrical contract and that, under Missouri law, this is insufficient for standing. (App. at 49). Further, Carpenters lacked standing to bring suit in its own name because it had not suffered any injury and its members were not damaged by the allegations made against O'Fallon. (Id). O'Fallon also further stated the various Counts should be dismissed because: there was a rational basis for choosing an electrical contractor associated with the IBEW Local 1; Appellants did not have a protected property interest in the award of the contract; the selection of one union contractor over another did not violate the First Amendment; and there was no standing under the Missouri bidding statutes. (App. at 50).

On July 17, 2014, Appellants filed a response to the Motion to Dismiss. (App at 105). In their response, Appellants argued the allegations in their Second Amended Complaint set forth a cause of action. (App. at 105). In their argument,

Appellants did not set forth any allegations supporting standing beyond that they were the lowest responsible bidder and that the contract was awarded to someone who was not the lowest responsible bidder. (App. at 108-109). Appellants also argued they had a right under Rule 23.2 to file a claim for equal protection, and, further, they had a claim for Freedom of Association. (Id).

On January 14, 2015, the District Court entered its Memorandum and Order sustaining O'Fallon's Motion to Dismiss. (App. at 157). In its Memorandum and Order, the District Court found that Higgins did not have standing to bring the action as it was merely a losing bidder on a contract. The District Court further found that Carpenters did not have standing to sue because a labor union cannot bring a suit against a municipal entity on behalf of member-employees who lack standing themselves to sue. (App. at 163-164).

The District Court then addressed the merits of the action, finding that Appellants' broad and conclusory allegations were insufficient to demonstrate an equal protection claim because Appellants failed to demonstrate they were a protected class for equal protection purposes. The Court also determined that, even if Appellants could serve as a "class of one," all bidders were subject to the same bidding procedures and requirements and Appellants did not show that they had been intentionally treated differently from others similarly situated without a rational basis. (App. at 166).

The District Court also determined there was no due process violation because there was no constitutionally protected property interest, and that there was no violation of freedom of association under the law because O'Fallon's preference for an IBEW contractor did not prevent Higgins' employees from associating with Carpenters. (App. at 167-171). The District Court then refused to exercise supplemental jurisdiction over the State law claims. That same day, the Court entered its Judgment and Order of Dismissal. (App. at 173). This appeal followed.

## SUMMARY OF THE ARGUMENT

The underlying suit was brought by the disappointed bidder on a municipal contract for the construction of a new firehouse. The Second Amended Complaint claimed violation of rights to Equal Protection, Freedom of Association and a violation of due process under the First and Fourteenth Amendments. (App. at 21-29).

Under the law, Appellants were required to allege facts showing they possessed a constitutionally protected property interest in the contract award and that they were then deprived of that interest without due process. *Kim Const. Co. v. Board of Trustees of Village of Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994). If no protected property interests exist, the issue of whether they were afforded due process before being deprived of that interest does not arise. *Id*. Lacking a property interest, they lacked standing to sue.

The Invitation to Bid in this matter clearly stated that O'Fallon "reserved the right to waive any variances from original bid specifications." (App. at 30). It also stated that the request for proposal created no obligation on the part of O'Fallon to award a contract or to compensate any applicant for any costs incurred during proposal presentation, response, submission, or oral interviews (if held). (App. at 31). O'Fallon reserved the right to reject any and all proposals when that rejection

was in the interest of O'Fallon and to award the contract to a bidder other than the lowest bidder. (App. at 36).

Under the law, the above creates no property interest in the losing bidder to the contract. The only Plaintiffs here were Appellants. The suit was not filed on behalf of a taxpayer or resident of the City of O'Fallon. Nor were there any facts alleged to support that anything untoward was done. Indeed, Higgins admits in its brief that it has no such facts, that it only knows it was the lowest bidder and that it wants to use the underlying case to explore why they lost.

There are also no facts alleged to support a violation of Equal Protection, either as a suspect class or as a class of one. Similarly, O'Fallon's acts did not deprive Higgins from associating with Carpenters, nor did they allege any facts supporting any detrimental effect from O'Fallon's actions beyond losing a municipal contract. Under these circumstances, there is no standing and the District Court properly dismissed the matter.

## ARGUMENT I

**THE DISTRICT COURT DID NOT ERR IN DISMISSING APPELLANTS' COMPLAINT AND DETERMINING THEY FAILED TO SET FORTH SUFFICIENT FACTS SUPPORTING STANDING IN THAT APPELLANTS' ALLEGATIONS REGARDING THEIR CLAIMS ARE CONCLUSORY RATHER THAN FACTUAL.**

### Standard of Review

The Eighth Circuit reviews a District Court's Rule 12(b)(6) dismissal de novo. *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Circuit 1999). When analyzing a Rule 12(b)(6) dismissal, the Court accepts the complaint's factual allegations as true and construes them in a light most favorable to the Plaintiff. *Id*. At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not merely be conclusory in its allegations. *Id*.

### Argument

In their first point on appeal, Appellants argue that the District Court erred in determining Appellants had failed to plead sufficient facts supporting their allegations that O'Fallon's bidding procedures did not permit all bidders to compete on equal terms and that the contract was not fairly bid. (See Brief of Appellants at 21). In support of this argument, Appellants cut and paste large

sections of appellate decisions into their Brief with little argument whatsoever regarding the nature of the allegations in their Second Amended Complaint. A review of the Second Amended Complaint supports the District Court's judgment.

In their Second Amended Complaint, Appellants alleged that during the spring of 2014, O'Fallon sent out an invitation for bid for construction of a new firehouse. (App. at 22). Appellants alleged the instructions to bidders contained an invitation to bid and indicated that the Recommended Guide would guide all bidding. (Id). They also asserted that the Recommended Guide indicates that the owner typically retains the right to reject any and all bids, but that the rejection should not be used as a subterfuge to accept a bid not submitted before the price of others were made public or to obtain an estimate of the cost of the work and proceed to award a segregated or separate contract or to a bidder selected in advance. (Id). Appellants further also claimed that the contract should normally be awarded to the lowest responsible bidder and that Higgins was the lowest responsible bidder. (App. at 22-23). They then alleged that the contract was awarded to a company with a higher bid.

Appellants alleged they were advised O'Fallon would not award them the contract because Higgins' employees were affiliated with Carpenters rather than the AFL-CIO. However, the contract was eventually awarded to a company affiliated with the Laborers Union rather than the AFL-CIO. (Id at 23-24).

Essentially, Appellants' arguments here are that the reason they were provided- affiliation with Carpenters- was false and, as the reason given was false, the reason for rejecting their contract must have been nefarious. (See Brief of Appellant at 29). There are no facts whatsoever supporting any such a claim.

The invitation to bid was attached to the Second Complaint as an exhibit. (App. at 30). Under Rule 10 of the Federal Rules of Civil Procedure, the Invitation to Bid was, hence, a part of the complaint for all purposes. *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). The invitation to bid expressly reserved the right to accept or reject any bids. *Id*. The owner also expressly reserved the right to award a contract in their best interest and to select a bidder other than the lowest. (App. at 32).

In reviewing a Rule 12(b)(6) motion to dismiss, courts accept as true all material allegations set forth in the complaint and construe those facts in favor of the non-moving party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). However, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations that are nothing more than conclusions are not entitled to the assumption of truth. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3rd Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be

presented, the complaint must include sufficient factual allegations to prove the grounds to which the claim rests. *Gregory v. Dillards, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The court is not required to divine litigant's intent and create claims that are not clearly raised or to conjure up unpled allegations to save a complaint. *Id*.

The allegations in the Second Amended Complaint do not support standing. The allegations are that O'Fallon sent out an invitation for bid for the construction of a new firehouse, that Higgins submitted a bid for the electrical work on the new firehouse, that Higgins had the low bid, but that the bid went to another contractor. While the Recommended Guide for competitive bidding procedures indicated that rejection of a bid should not be used as a subterfuge to obtain an estimate of the cost of work and proceed to award it to a bidder selected in advance, Appellants made no allegations to show this occurred. The sole allegations were that the reason they were given for not getting the contract was not true.

There are no allegations that the winning bidder had contact with O'Fallon prior to the invitation to bid, no indication that the winning bidder had any conversations or contact with O'Fallon during the bidding process, nor were there any allegations of fact showing any improper motive in awarding the contract to the winning bidder. Any allegations that the award of the contract was granted in an improper manner are merely conclusory without any facts to support them.

Appellants assertions do not meet the above-quoted standard that facts, rather than conclusion, govern. As set forth below, Appellants allegations clearly fail to support standing under the law.

## ARGUMENT II

**THE DISTRICT COURT DID NOT ERR IN DETERMINING APPELLANTS LACKED STANDING TO CHALLENGE THE CONTRACT AWARD IN THAT MISSOURI LAW IS CLEAR THAT A LOSING BIDDER LACKS STANDING.**

### Standard of Review

The Eighth Circuit reviews a District Court 's Rule 12(b)(6) dismissal de novo. *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). When analyzing a Rule 12(b)(6) dismissal, the Court accepts the complaint's factual allegations as true and construes them in a light most favorable to the Plaintiff. *Id*. At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not merely be conclusory in its allegations. *Id*.

### Argument

In every Federal case, a party bringing suit must establish standing to prosecute the action. *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 10 (2004). The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. *Id*. The standing requirement is born partly of an idea, which is more than an intuition, but less than

a rigorous and explicit theory, about the Constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government. *Id.*

The party invoking federal jurisdiction has the burden of establishing that they have standing to assert the claim. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). Standing consists of three elements: 1) that plaintiff must have suffered an injury in fact; 2) there must be a causal connection between that injury and the conduct complained of; and 3) it must be likely that the injury would be redressed by a remedy the court could order. *Id.* In a diversity case, a court will not address the plaintiff's claim unless the plaintiff has standing to sue under state law. *Metropolitan Exp. Services, Inc. v. City of Kansas City, Missouri*, 23 F.3d 1367, 1369 (8th Cir. 1994).

Protected property interests are not created by the Constitution, but rather, are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law. *Id*. Hence, Appellants had to allege facts showing they possessed a constitutionally protected property interest in the contract award and that they were then deprived of that interest. *Kim Const. Co. v. Board of Trustees of Village of Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994).

To possess a constitutionally protected property interest in an award of a municipal contract, an individual must have a "legitimate claim of entitlement to

it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). State law determines whether there is a legitimate claim of entitlement. *Id.* Under Missouri law, Appellants had no standing, as a losing bidder for a construction contract with the municipality, to file an action.

In *La Mar Const. Co. v. Holt Co. R-II School Dist.*, 542 S.W.2d 568 (Mo.App. 1976), the Holt County School O'Fallon wanted to add a new gymnasium and a classroom to the Mound City High School. It advertised for bids. The notice to bidder stated that the owner reserved the right to reject any and all bids and to waive all formalities. La Mar Construction Company was the lowest bidder, but the contract was awarded to Glaze Construction Company. La Mar Construction Company then filed suit. *La Mar Const. Co.*, 542 S.W.2d at 569. The trial court dismissed the claim and La Mar appealed.

On appeal, the Court of Appeals held that La Mar could not state a cause of action because it could not allege a pecuniary interest in the matter, showing a clear legal right to relief, because the rejection of the bid did not give it any private right which it could enforce. *Id*. The invitation to bid was not a contract and the reservation by the school district to reject any and all bids clearly demonstrated that no contract was being entered into. *Id*.

The court also determined that La Mar had filed the lawsuit in its name alone and that the petition contained no allegations that the action was brought by

the plaintiff as a member of the public or to protect the interest of the public. La Mar did not bring the suit as a tax payer or representative of other tax payers in the district, but brought the action merely as the disappointed bidder. As a result, it had no standing to sue. *La Mar Const. Co.*, 542 S.W.2d at 570-571.

In *Metcalf & Eddy Serv., Inc. v. City of St. Charles*, 701 S.W.2d 497 (Mo.App. 1985), the plaintiff was a bidder on a contract for sewer services for the City of St. Charles. Under the contract, the City of St. Charles reserved the right to accept any proposal, to reject any proposal, and to waive irregularities or formalities. *Metcalf & Eddy Serv., Inc.*, 701 S.W.2d at 498. Metcalf & Eddy submitted the lowest bid, but the contract was awarded to another contractor. Metcalf & Eddy then brought suit. After the trial court dismissed the action, Metcalf & Eddy appealed.

On appeal, the Missouri Court of Appeals held that Metcalf & Eddy had to allege a special pecuniary interest in the matter showing a clear legal right to relief to have standing. *Metcalf & Eddy Serv., Inc.*, 701 S.W.2d at 499. The court held that no such right was alleged. Further, while there was a statute at issue in that case requiring that contracts be given to the lowest and best bidder, that statute was for the benefit and protection of the public and not bidders. As a result, the statute provided no standing to Metcalf & Eddy. *Id.* The contract had reserved the right

to reject any and all bids and no vested interest or property right existed in the rejected bidder.

The *La Mar* and *Metcalf & Eddy* cases cited above are instructive. As in those cases, the present suit was brought by a disappointed bidder to a municipal contract. As in those cases, the bidding materials expressly reserved the right to award the contract to a bidder that was not the lowest. Further, as in those matters, the Appellants did not sue as members of the public, but merely as a losing bidder.

Higgins relies on the case of *Metropolitan Express Services, Inc. v. City of Kansas City*, 23 F.3d 1367 (8th Cir. 1994) for the proposition that it had standing to sue. The facts of *Metropolitan* are completely different from those in the present matter and show that *Metropolitan* has no applicability.

In the *Metropolitan* case, Metropolitan was a subcontractor with the Kansas City Area Transportation Authority to provide scheduled ground transportation between Kansas City International Airport and destinations in the metropolitan area. *Metropolitan Express Services, Inc.*, 23 F.3d at 1368. To increase the number of passengers, the Authority requested permission from the City to use mobile ticket counters in all three terminals. These counters would travel from gate to gate to meet passengers as they de-planed. The City denied the request and the Authority cancelled its contract with the City because the Authority did not believe it could make a profit without such counters. *Id.*

The City then opened the service up for bids. Metropolitan considered submitting a bid, but did not do so because the agreement open for bidding did not provide for mobile ticket counters. Metropolitan, hence, believed the contract was not economically feasible. *Metropolitan Express Services, Inc.*, 23 F.3d at 1369. The City awarded the contract to a bidder and then re-negotiated the terms to allow for ticket counters in all three terminals. Metropolitan then filed an action.

The Eighth Circuit recognized the general rule that disappointed bidders have no standing to file an action under Missouri law. *Metropolitan Express Services, Inc.,* 23 F.3d at 1370-1371. The Court noted, however, that the terms of the contract awarded ended up being substantially different from those in the bid documents. The contract as bid was not economically feasible because it did not allow for terminal counters. However, immediately after the contract was awarded, terminal counters were permitted. Thus, the unsuccessful bidder was denied a fair opportunity to bid on the public contract. *Id*.

The allegations in the *Metropolitan* case are clearly distinguishable from those before the Court. In *Metropolitan,* facts were specifically pled showing that the terms of the invitation to bid were substantially different from those as awarded. The invitation to bid consisted of terms which were not economically feasible because it did not include the right to have counters. However, as soon as the bid was awarded, the right to terminal counters was granted. This substantially

changed the terms of the contract and resulted in a contract being awarded without the opportunity to bid.

There are no similar facts set forth in the present matter. There are no facts alleged in the Second Amended Complaint that the terms of the contract awarded were different from those on which Higgins bid. Instead, the allegations are simply that Higgins had the lowest bid and still lost the contract. While Appellants makes conclusory allegations that the award was somehow unfair, Appellants' allegations here do not place their facts within *Metropolitan*. Instead, their facts are more similar to those in *Metcalf* and *La Mar*, where the disappointed bidder brought suit claiming they should have been awarded the contract because their bid was lower.

Appellants admit they have no facts supporting any claim that anything nefarious took place, and argue they base their belief merely on an alleged false reason as to why they lost the bid. This demonstrates nothing. Appellants cite to no cases where there are similar allegations and standing was found to exist. Contrary to their allegations, they have no facts cited to show there was anything improper with the award of the bid in this matter.

Appellants also cite to the case of *Public Communications Services, Inc. v. Simmons*, 409 S.W.3d 538 (Mo.App. 2013). Again, *Public Communications Services, Inc.* is distinguishable on its facts.

In the *Public Communications Services, Inc.* case, Public Communications Services, Inc. ("PCS") provided telephone services to inmates housed in facilities run by the Missouri Department of Corrections. When their contract was due to expire, the Office of the Administrations Division of Purchasing and Materials Management issued a request for proposals for a new five-year contract. The contract included a proposal for "optional products and services" which did not define the types of services to be provided. PCS employees met with Purchasing Division officials to express concerns about this provision and discussed how it would make it impossible for the Purchasing Division to thoroughly compare the bids. Seven companies submitted bids, but the optional products and services sections made the bids substantially different. When the award was given to another carrier, PCS filed suit. *Public Communications Services, Inc.*, 409 S.W.3d at 542-544 (Mo.App. 2013). The trial court entered a judgment on behalf of the state and PCS appealed.

One of the issues on appeal was whether PCS had standing under Missouri law. The court recognized the general rule that the losing bidder has no standing to challenge the award of a government contract. *Public Communications Services, Inc.*, 409 S.W.3d at 546. However, based upon *Metropolitan Express Services*, the court found that the terms of the contract as awarded and the one bid by PCS were substantially different. Further, the court noted that PCS' allegations were

regarding the lawfulness of the procurement process. The court, therefore, determined that standing existed.

Again, the facts in *Public Communications Services, Inc.* are different from the facts before the Court here. There are no allegations here that the terms of the contract bid by Higgins and by the winning bidder were different. The only allegations, indeed, are that the same contract was bid by two different contractors and that Higgins was not the winning bidder. Under Missouri law, Higgins has no standing to file suit under these facts.

Appellants make a confusing argument that they have a right to associate and, therefore, they have standing to sue. The case of *Sacco v. Pataki*, 982 F.Supp.2d 231, 242 (S.D. N.Y. 1997) affirmed *Abramson v. Pataki*, 278 F.3d 93 (2nd Cir. 2002) is on point and rejects any such argument. In the *Sacco* case, the plaintiffs were union members who worked for several years on the Jacob Javitz Center, but could not continue their employment there after a highly publicized effort to eradicate corruption and ties to organized crime. *Sacco*, 982 F.Supp.2d at 234. The plaintiffs argued that defendants violated the First Amendment right of freedom of association by not allowing them to return to work at the center with the union of their choice. *Id.* The court dismissed those claims.

In dimissing the claims, the Court determined that the "the general obligations of employers are not found in the First Amendment. The First

Amendment does not require the Javitz Center to recognize and bargain with all unions equally. Its decision to recognize unions other than the Local 829 does not implicate the First Amendment." *Sacco*, 982 F.Supp at 242. There was nothing in the First Amendment requiring the Javits Center to bargain with several unions equally. Id

Similarly, in *Hanten v. School District of Riverview Gardens*, 183 F.3d 799 (8th Cir. 1999), Casey's Sheet Metal, a non-union heating and air conditioning shop, three of its employees and a taxpayer claimed that the school district of Riverview Gardens violated the right of non-union employees to freely associate when the school district decided to engage a union only subcontractor. The specifications for the bid had encouraged bidders to enter into a collective bargaining agreement, but did not require it. Casey's Sheet Metal had the lowest bid, but did not get the bid. In their Complaint, they alleged that the Board had secretly changed the specifications to prohibit use of any subcontractor on the school project whose employees were not represented by an AFL-CIO union.

In rejecting the freedom of association claim, the Eighth Circuit recognized that the freedom of association presupposes a freedom not to associate. *Hanten*, 183 F.3d at 805. The court held that the school district was entitled to engage in conduct that incidentally inhibited protected forms of association like non-union members, so long as the conduct was rationally related to a legitimate

governmental purpose. Where a governmental practice might conceivably, but only incidentally impact association members, it does not directly or substantially interfere. *Hanten*, 183 F.3d at 806.

In *Hanten*, the Court found the complaint failed to allege, in non-conclusory terms, that the union preference was likely to directly or substantially interfere with the rights of Casey's employees. There was no claim that a preference for union workers was likely to coerce employees to join a union, no claim there was a shortage of work, no claim the employees lost wages or were more likely to suffer wage loss as a result of the preference, and no claim the preference would likely cause the employees to quit working for Casey's. *Id*. There was not even an assertion that the employees would do anything different as a result of the preference that they would not have done had there been no preference. *Id*. The preference that bidders of the school project were signatories to an agreement with the AFL-CIO union was facially rational. *Id.*

As in *Hanten* and *Sacco*, the Second Amended Complaint in this matter does not allege anything to support any interference with the freedom to associate on the part of the Carpenters in this matter. First, as noted in *Sacco*, there is nothing in the Constitution prohibiting a preference for one Union over another. If, indeed, O'Fallon advised Higgins that it preferred members of the AFL-CIO to Carpenters, this would not implicate first Amendment rights.

Further, as in *Hanten*, there are no allegations here that there was a shortage of work, no claim the Carpenters employees lost wages or were likely to suffer wage loss as a result of the preference, no claim that a preference for the AFL-CIO would likely cause the employees for Carpenters to quit working for Higgins or to join a different union and no claim that such preference was likely to coerce the employees to join an AFL-CIO union. Indeed, there is no assertion that the employees did anything as a result of the alleged preference that they would not have otherwise done. (See Second Amended Complaint at 27). Instead, Appellants only allege that there was an interference with the freedom to associate without any facts whatsoever as to how that affected them. Under *Hanten*, these facts fail to support a claim of for violation of the freedom to associate.[1]

---

[1] At the trial court level, Appellant claimed that Carpenters had standing under Federal Rule 22.2. The District Court held that no such standing existed and no arguments are made in Appellant's Brief for standing under that Rule. Appellant has, therefore, clearly abandoned any argument under Rule 22.

## ARGUMENT III

**THE DISTRICT COURT DID NOT ERR WHEN IT DETERMINED IT DID NOT HAVE JURISDICTION UNDER 41 U.S.C. SECTION 1983, THE FIRST AMENDMENT AND THE FOURTEENTH AMENDMENT BECAUSE THE COURT DID NOT HAVE JURISDICTION IN THAT APPELLANTS FAILED TO PROPERLY ALLEGE CAUSES OF ACTION AND HAVE NO STANDING TO ALLEGE CLAIMS.**

### Standard of Review

The Eighth Circuit reviews a District Court's Rule 12(b)(6) dismissal de novo. *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Circuit 1999). When analyzing a Rule 12(b)(6) dismissal, the Court accepts the complaint's factual allegations as true and construes them in a light most favorable to the Plaintiff. *Id*. At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not merely be conclusory in its allegations. *Id*.

### Argument

Appellants next argue Carpenters has a valid claim under the First Amendment as they alleged an equal protection violation. First, as this Court knows, equal protection is not protected under the First Amendment. More importantly, the equal protection clause does not apply in this matter.

Appellants admit that they are not attempting to claim that they are members of a protected class such as gender or race. (See Appellant's Brief at 40 – 41). Instead, they allege they are entitled to make an equal protection claim under a "class of one theory." To state a claim under the equal protection clause under a "class of one" claim, a plaintiff must allege that: 1) it was treated differently from others similarly situated in all relevant respects; 2) defendants had no rational basis for the differential treatment; and 3) the differential treatment resulted from a non-discretionary state action. *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 604 (2008).

In the *Engquist* case, the court declined to apply the "class of one" doctrine to public employment reasoning that "There are some forms of state action, however, which by their nature involve discretionary decision making based upon a vast array of subjective, individualized assessments. In such cases, the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such officials are entrusted to exercise." *Id*.

While the Supreme Court in *Engquist* recognized that class of one standing should not be applied in cases involving employment. The principle has also been applied outside of that area. See *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008)("We have little trouble applying the reasoning of *Engquist*...to the circumstances in this case involving a government-contractor relationship…just as in the employee context, and in the absence of restricting contractor statute, decisions involving government contractors require broad discretion that may rest on a wide variety of factors that are difficult to articulate and quantify.") *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009)(applying *Engquist* to a police officer's investigative decisions).

Recently, in *Corey Airport Services, Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293 (11th Cir. 2012), the Eleventh Circuit refused to apply the "class of one" theory in an equal protection case involving a government contract. In that case, the court found that every government run bid process involves winners and losers and that the selection of a winner inherently involves a kind of discrimination in itself. "If the law allowed groups defined basically as the 'bid losers' to be the basis of an Equal Protection Clause claim, every government bid process – with winners and losers – would theoretically support such an equal protection claim." *Corey Airport Services, Inc.*, 682 F.3d at 1298. "Federal courts are not intended to be the constant overlords of government contracts.

Governments must have more leeway than that in conducting bid processes for their contracts." *Id.*

Under the above cases, the "class of one" theory should not apply to government contracts, as they involve inherently discretionary decisions on the part of the government which are similar in nature to the employment situations involved in the *Engquist* case. As with the employment situation, allowing a "class of one" equal protection case in every matter involving government contracts would, in essence, result in every government contract having to be reviewed by a court. As the Eleventh Circuit noted, the federal courts are not intended to be the constant overlords of government contracts. The class of one theory should not apply in the present situation.

Even if the class of one theory could apply to municipal contracts, Appellants did not allege how they were treated differently from other similarly situated electrical contractors. As the District Court found, there were no facts provided to support such a claim. There was no evidence that similarly situated electrical contractors received favorable treatment over them. Instead, all bidders were subject to the same bidding procedures and requirements. Appellants did not identify in their Second Amended Complaint any bidders who were not required to follow instructions or show that they were the only electrical contractor denied the contract of work on allegedly impermissible grounds. As a result, they did not

allege sufficient facts to state a claim. *Barstead v. Murray County*, 420 F.3d 880, 884 (8th Cir. 2005).

In the present case, Appellant also failed to allege, as required under *Engquist*, that the differential treatment resulted from a non-discretionary state action. *Engquist,* 553 U.S. at 604. Indeed, this is something they could not allege. The award of a contract is never going to be merely ministerial and discretion is always going to be involved.

Appellants next jump back to the issue of whether the Carpenters had standing in this matter. They allege Carpenters had proper standing in their own right, but cite nothing to support this. They do not allege that Carpenters had standing in their own right because they allege no violation under any constitutional provision. While they state they have alleged a "concrete harm" causally related to O'Fallon's actions, they set forth no facts to support this allegation . As noted above, Carpenters would need to have a property interest in order to have standing. However, Carpenters was only going to be able to do the work if *Higgins* was awarded the contract. Thus, as the District Court noted, this standing would come through *Higgins*. Carpenters had no right to the contract, and Appellants alleges no fact whatsoever to support anything to the contrary.

Appellants also allege they have "associational standing." (See Appellant's Brief at 43). However, they fail to apply the requirements for that standing. An

association has standing to sue on behalf of its members where the members would otherwise have standing to sue in their own right. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Appellant claimed that the members of the union here have standing because they are tax payers and, as such, have a right to challenge the contract awarded by O'Fallon. However, nowhere in the Second Amended Complaint was it ever alleged that any of the members of Carpenters are tax payers, let alone tax payers of the City of O'Fallon. Indeed, it is nowhere alleged that even a single member of the Carpenters' union is a resident of the City of O'Fallon.

Nor is it anywhere alleged that Carpenters was suing as tax payers or members of the public. Instead, in the Second Amended Complaint, Carpenters alleged that it "brings this action on behalf of the class of its members who are employed by Higgins." (See App. at 21). Hence, the only basis Carpenters used for standing was the fact that its members were employed by Higgins. There are no allegations anywhere in the Second Amended Complaint that they were tax payers for the City of O'Fallon. As such, the allegation now, in the Brief, that they are tax payers is insufficient to confer standing.

Further, even in the Brief, it is only alleged that they are "members of the public." (See Brief at 44). There is nothing indicating that any of the members

reside in O'Fallon or that they are tax payers in the City of O'Fallon. As such, there is no standing for the individual members to confer on the Association.

Further, the right the Appellant claims to be seeking to protect "the right to work without being discriminated against because they are members of one union, rather that(sic) another" are insufficient as well. (See Brief at 43). As noted above, Appellants have alleged no cause of action based upon the selection of one union over another. Indeed, the caselaw is clear that no such claim lies.

Nor have Carpenters identified an injury in fact in this matter. In *National Federation of the Blind of Missouri v. Cross*, 184 F.3d 973 (8th Cir. 1999), Rehabilitation Services for the Blind, a Missouri State Agency, developed a public policy prohibiting its employees from distributing literature or discussing services offered by consumer groups such as the National Federation of the Blind. The National Federation of the Blind brought suit and the District Court dismissed the claim, finding that they lacked standing.

On Appeal, the National Federation for the Blind claimed it had a cognizable injury in fact because the policy would make it more difficult for blind individuals who were not National Federation for the Blind members to learn of its services. This would frustrate its organizational purpose and deprive it of access to clients. *National Federation of the Blind of Missouri*, 184 F.3d at 980. The Eighth Circuit held that the National Federation for the Blind had not alleged the policy had

impacted it in any measurable way, had not alleged it had suffered a reduction of membership and had not alleged that restrictions had been placed on its ability to provide information directly to the blind community on its own. *Id.* The court also noted that there were no allegations that the policy would make the National Federation program non-competitive or interfere with its other activities. As a result, it did not establish an injury in fact beyond speculative injuries. *Id.*

The court also rejected any argument that there was representational standing to bring the claims of the members because any alleged damages were hypothetical. Without a concrete present or future injury, there would be no standing to sue. *National Federation of the Blind of Missouri*, 184 F.3d at 981.

As in the *National Federation of the Blind of Missouri* case, no injuries have been alleged by Carpenters in this matter. They have not alleged that they lost members, that there was a shortage of work, that any employee lost wages or that any employee was more likely to suffer wage loss as a result of the contract. Nor are there any allegations that any of the employees quit working for Carpenters or joined another union because of the loss of this contract. Further, there are no allegation that any of the individual members of Carpenters lost work or were unable to work because of the preference. As the result, any claim of damage is hypothetical and there is no standing.

Appellants then jump to the question of whether their claim under the First Amendment should have been dismissed.  Again, as noted above, there is no First Amendment claim here.  Nor, contrary to Appellants' arguments, is merely being a member of the "public" sufficient for there to be a right to contest the bid award. There are more than three hundred million people in the United States, each of whom could be said to be members of the "public."  Appellant has not alleged that they are affected members of the public in this matter.  Further, as noted above, they never allege in their Second Amended Complaint that they were suing as members of the public, and instead, only sued as members of Carpenters, who were employees of Higgins.

Appellants next argue that they have a right under the Fourteenth Amendment to sue.  Almost the entire argument is nothing more than quotes from the *Metropolitan* case.  However, as noted above, the *Metropolitan* case is distinguishable in the present matter.  Unlike in *Metropolitan*, where the contract bid on was substantially different from the contract awarded, there are no similar allegations in the present matter.  *Metropolitan* has no applicability in this matter.

Finally, Appellants argue that the proposal documents required O'Fallon to award the bid to Higgins as the lowest responsible bidder.  The only way the Court could reach this conclusion is by completely ignoring all the language of the invitation to bid documents and Missouri law.

The invitation to bid documents clearly stated the Fire Protection District reserved the right to accept or reject any and all bids and reserved the right to waive any variance from original bid specifications. (App. at 30). The documents also stated that while it was the intent of the owner to award a contract to the lowest responsible bidder provided the bid had been submitted in accordance with all requirements, "the owner reserved the right…to award contracts in its best interest and, therefore, reserves right to select a bidder other than the lowest." (App. at 36).

Appellants choose to completely ignore the above-language. Instead, they only focus on the isolated language in the Recommended Guide stating that the contract "should" go to the lowest bidder. Appellants argue that, based upon this, that there is now a contractual requirement to accept the lowest bid.

However, there is nothing in the contract, or any of the documentation requiring that the lowest bid be accepted. While the Recommended Guide states that a contract "should" be awarded to the lowest bidder, it does not say that it "must be" or "shall be." Indeed, as noted above, the terms of the bidding documents are quite clear that the O'Fallon reserved the right to accept a bid other than the lowest bid. Missouri case law in *Lamar* and *Metcalf & Eddy* has been clear that this language is sufficient to defeat any claim that there is a right to any

contract. Instead, as noted above, these cases have held that the language demonstrates that there is no property interest in the contract.

Appellants also argue that there is somehow an ambiguity created by the above-language. There is no ambiguity. The invitation to bid states O'Fallon reserves the right to accept a bid other than the lowest. While the documents say that they "should" accept the lowest bid, the documents also say they reserve to take a bid which is not the lowest. These are <u>not</u> inconsistent. The word "should" does not mean "shall." Appellants do not cite the Court to any case saying that the word "should" is the equivalent to the word "shall." There is no ambiguity in this matter and the argument that there is an ambiguity is a stretch to say the least.

## **CONCLUSION**

Based upon the above, Appellee hereby requests this Court reject Appellants arguments, and affirm the judgment in favor of Appellee.


*/s/ Aaron I. Mandel*
Lawrence R. Smith, #MO31976
Aaron I. Mandel, #MO39692
Brinker & Doyen, L.L.P.
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
314-863-6311
Fax: 314-863-8197
smith@brinkerdoyen.com
amandel@brinkerdoyen.com
***Attorneys for Appellee O'Fallon Fire Protection District***

## CERTIFICATE OF COMPLIANCE

I, one of the attorneys for Appellees certify that the number of words in the Brief of Appellee are 9,123 which is based on a word count in the word processing system. The name and version of the word processing software used to prepare the brief is Microsoft Word 2010.

*/s/ Aaron I. Mandel*

Lawrence R. Smith, #MO31976
Aaron I. Mandel, #MO39692
Brinker & Doyen, L.L.P.
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
314-863-6311
Fax: 314-863-8197
smith@brinkerdoyen.com
amandel@brinkerdoyen.com
***Attorneys for Appellee O'Fallon Fire Protection District***

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. Participants in the case who registered CM/ECF cases will be served by the CM/ECF system this 30th day of March, 2015, to:


Lawrence P. Kaplan, Esq.
Joshua M. Avigad, Esq.
KAPLAN ASSOCIATES, LLC
101 South Hanley, Suite 1225
St. Louis, MO 63105
314-863-2929
314-863-9777
javigad@ka-law.com
lkaplan@ka-law.com
***Attorney for Appellant***

*/s/ Aaron I. Mandel*
Lawrence R. Smith, #MO31976
Aaron I. Mandel, #MO39692
Brinker & Doyen, L.L.P.
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
314-863-6311
Fax: 314-863-8197
smith@brinkerdoyen.com
amandel@brinkerdoyen.com
***Attorneys for Appellee O'Fallon Fire Protection District***